## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

February 22, 2024

**VIA CM/ECF**

Re:    *Drivetrain, LLC v. DDE Partners, LLC*, Adv. Proc. No. 22-50439,
*Drivetrain, LLC v. Fiftysix Investments LLC*, Adv. Proc. No. 22-50441,
*Drivetrain, LLC v. Justin Label and Millennium Trust Company, LLC*,
Adv. Proc. No. 22-50443

Dear Counsel:

In October 2023, this Court issued a Memorandum Opinion resolving cross-motions for summary judgment in each of the three above-captioned adversary proceedings.[1]   In these actions, the plan trustee seeks to avoid and recover, as fraudulent transfers, amounts the debtor paid to the defendants to acquire its own shares in a prepetition tender offer.   The Memorandum Opinion explains that the trustee is entitled to the entry of summary judgment in each of these lawsuits.   The opinion concludes by directing the parties to settle forms of judgment.

---

[1] The Memorandum Opinion is docketed at D.I. 40 in case no. 22-50439, at D.I. 40 in case no. 22-50441, and at D.I. 43 in case no. 22-50443.  Because the pleadings filed in each of the three cases are largely identical, when this Letter Opinion cites to material on the docket [D.I. __], it is referring to the docket in case no. 22-50439.

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441, and 22-50443
February 22, 2024
Page 2

Unable to agree on a form of judgment, the parties submitted, on February 15, 2024, a joint certification of counsel setting forth their positions on four points of disagreement. The Court appreciates the clear and simple manner in which the parties have teed up the issues on which they disagree. For the benefit of the parties and any reviewing court, this Letter Opinion sets forth the Court's reasoning with respect to its resolution of those four points.

1.   The parties dispute the plan trustee's entitlement to prejudgment interest. The Third Circuit explained in *In re Hechinger*, which was also an avoidance action, that "prejudgment interest should be awarded unless there is a sound reason not to do so."[2] Such an award is appropriate in order to compensate the estate for the time during which it was deprived of the use and possession of the value that had been transferred.[3]   The only reason that defendants offer in support of their contention that the Court should exercise its discretion against awarding prejudgment interest is that they have committed no wrongdoing and raised legitimate defenses.[4] But that was at least equally true in *Hechinger*, a preference case in which the defendant had merely been paid on a valid antecedent debt during the 90-day period before the debtor's bankruptcy filing and asserted colorable

---

[2] *In re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 580 (3d Cir. 2007) (internal quotation and citation omitted).

[3] *In re AE Liquidation, Inc.*, No. 08-13031-MFW, 2016 WL 1238848 (Bankr. D. Del. Mar. 20, 2016); *In re USN Commc'n., Inc.*, 280 B.R. 573, 602 (Bankr. D. Del. 2002).

[4] D.I. 44 at 2.

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441, and 22-50443
February 22, 2024
Page 3

affirmative defenses.  The Court accordingly concludes that an award of prejudgment interest is appropriate here.

2.     The parties agree that if the Court does award prejudgment interest – as the paragraph above explains that it will – such interest starts running on December 1, 2020, the date on which the plaintiff made a demand on the defendants.[5] But the parties dispute the appropriate rate of prejudgment interest.  The plan trustee's initial position is that the Court should use the post-judgment interest rate set forth in 28 U.S.C. § 1961(a), but that it should use the *current* rate rather than the one in effect at the time interest begins to run.  The plan trustee alternatively suggests that the Court use the prime rate as of the time of the demand.  Defendants urge the Court to use the post-judgment interest rate in effect at the time of the demand.

The notion that the *present* interest rate should apply, rather than the one in effect at the time when interest begins to accrue, has no analytic support.  The point of prejudgment interest is to compensate the estate for the loss of the funds from the time it made its demand through the date of judgment.  Using an interest rate in effect on the date of judgment is thus inappropriate.[6]

---

[5] *See generally In re Meridian Auto Sys.-Composites Operations, Inc.*, 372 B.R. 710, 725 (Bankr. D. Del. 2007).

[6] Perhaps a case could be made for using floating rates over the period in question rather than a fixed rate based on the rate in effect on the date on which the demand was made.  *See generally* Michael S. Knoll, *A Primer on Prejudgment Interest*, 75 Tex. L. Rev. 293, 316 (1996).  The parties, however, have not advanced such an argument here.

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441, and 22-50443
February 22, 2024
Page 4

The question is therefore which of the rates in effect at the time of the demand should be used.  The caselaw instructs that the rate should "fairly and adequately compensate" the plaintiff.[7]  That said, Judge Walrath correctly observed in *In re AE Liquidation* that "[m]ost federal courts apply the post-judgment interest rate set forth in section 1961 of title 28 when awarding prejudgment interest."[8]  If this Court were writing against a blank slate, it would certainly be open to the argument that the debtor's actual prepetition cost of capital, or some other commercial interest rate, would more appropriately compensate the plaintiff for the loss of use of the funds than does the statutory post-judgment interest rate.  And in fairness, the plan trustee makes this point in its alternative argument for the use of the prime rate.

While the Court has some sympathy with this position, it does not see any basis for distinguishing this case from the many other cases in which courts have used the post-judgment interest rate to calculate prejudgment interest.  So without excluding the possibility that the Court might reach a different conclusion in a case in which evidence is presented demonstrating the actual commercial effect on the estate of having been without the transferred funds for the period in question, based on the limited record before it, the Court will follow the approach adopted by most courts and grant prejudgment interest at the statutory post-judgment interest rate in effect at the time demand was made on the defendants.  Here, that means that interest

---

[7] *In re Frescati Shipping Co., Ltd.*, 886 F.3d 291, 315 (3d Cir. 2018).

[8] 2016 WL 1238848 at *3.

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441, and 22-50443
February 22, 2024
Page 5

should accrue on the amount of the tender offer proceeds received from each defendant, for the period from December 1, 2020 through the date on which judgment is entered, at an annual rate of 0.11 percent.  The Court has performed this calculation and will enter judgment in that amount.

3.    Defendants argue that the judgment should take account of the defense they claim to have raised under § 548(c) of the Bankruptcy Code.  While the Court could certainly have been clearer in its Memorandum Opinion, the Court did consider and reject the argument defendants actually made about the "value" they claim to have provided to the debtors.  That argument was about the value of the shares that defendants tendered back to the debtor in the tender offer.  The Court concluded (as the defendant acknowledged at argument) that those shares were worthless.  As such, the tender of those shares does not give rise to a defense under § 548(c).

Defendants now make a new and different argument about how the value provided in the tender offer was the paying down of the defendants' valid claims for fraud against the debtor.  That argument, however, appears nowhere in the defendants' briefs, but is made for the first time in the certification of counsel.  The argument is thus forfeited.

Section 548(c) of the Bankruptcy Code provides that a party that receives a fraudulent conveyance "that takes for value and in good faith has a lien on … any interest transferred … to the extent that such transferee … gave value to the debtor

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441, and 22-50443
February 22, 2024
Page 6

in exchange for such transfer or obligation."[9]  The point of this provision is to protect a buyer who, despite being the recipient of a fraudulent conveyance, acted in good faith and paid value in exchange for the transfer that it received from the debtor.

Consider, for example, a party that in good faith paid $100,000 to the debtor, prepetition, for land that was worth $500,000.  The debtor's trustee in bankruptcy can avoid the transfer and recover the land.  But if the trustee does so, § 548(c) grants the defendant a lien on the land to the extent of the $100,000 that the defendant paid in good faith.

In defendants' brief in opposition to summary judgment, they identify the amount that they originally paid for the shares of the debtor, and then go on to argue that they acted in good faith.[10]  The Court did not address the question of defendants' good faith in its Memorandum Opinion, as the Court does not believe that the existing record would support the entry of summary judgment for either party on the question whether the defendants knew of (or perhaps had reason to suspect) the underlying fraud at the time of the tender offer.  But their good faith did not matter, because even assuming the defendants' good faith, the defendants did not provide anything of value in exchange for the transfer they received from the debtor.

This transaction was a tender offer in which the debtor paid cash to the defendants to acquire its own shares.  As the Memorandum Opinion explained, the

---

[9] 11 U.S.C. § 548(c).

[10] D.I. 26 at 1-5.

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441,
and 22-50443
February 22, 2024
Page 7

parties agree that the shares that the debtor acquired from the defendants were
worthless at the time of the tender offer.[11]  Defendants' arguments about the amount
they originally paid for the shares miss the point of § 548(c).  The language of the
statute is focused on the value given "in exchange for" the transfer in question, which
means the value of the shares at the time that the defendants tendered them.  The
amount the defendants originally paid for those shares is neither here nor there for
this purpose.  Because the defendants gave nothing of value in exchange for the
challenged transfer, the argument the defendants made in their opposition brief in
support of a § 548(c) defense is unsuccessful.

In the certification of counsel, defendants make a new and different argument.
They argue that the value they gave in connection with the tender offer is not the
cash they paid when they purchased the shares.  Rather, they argue that because the
debtor's underlying business was fraudulent from the start, their original purchase
of shares in the debtor immediately gave rise to claims for fraud and recission.
Defendants contend that the value they provided in the tender offer was not the
shares they tendered, but rather the "satisfaction of the Defendants' fraud and
recission claims."[12]  Otherwise put, defendants suggest that every dollar they received
in the tender offer should operate to pay down a dollar of debt that they were owed
by the debtor on account of having been defrauded into purchasing the shares – at

---

[11] Memorandum Opinion at 10, 19.

[12] D.I. 44 at 5.

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441, and 22-50443
February 22, 2024
Page 8

least until the point at which they would have recouped whatever they paid for those shares.

In support of this argument, defendants (in the certification of counsel) cite to *Perkins v. Haines*, an Eleventh Circuit case that arose in the context of a Ponzi scheme.[13] The court there found that the "net winners" in a Ponzi scheme are liable only for their net winnings, not all of the amounts they might have received, because the distributions they received from the Ponzi scheme effectively satisfied their antecedent claims for fraud. Because, under the fraudulent conveyance statute, the satisfaction of a valid antecedent debt counts as the provision of value, the paying down of the claim for fraud is treated as value the defendants provided back to the debtor.[14]

This Court will not engage the merits of that argument, which defendants make for the first time in the certification of counsel. Defendants' summary judgment opposition brief nowhere suggested that the value they provided the debtor when they received the tender offer proceeds was the paying down of valid claims for fraud arising out of their initial investments. And their briefs made no mention of *Perkins v. Haines*. The plan trustee might or might not have had a response to such an argument had it been advanced in the summary judgment briefs. The orderly

---

[13] *Perkins v. Haines*, 661 F.3d 623 (11th Cir. 2011).

[14] *See generally* 11 U.S.C. § 548(d)(2)(A) ("'value' means … satisfaction … of a present or antecedent debt of the debtor").

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441, and 22-50443
February 22, 2024
Page 9

resolution of disputes requires that parties set forth their arguments in their briefs. A certification of counsel submitted four months after the Court has issued its decision is simply too late for an argument to make its first appearance.[15] The defendants' failure to make any reference in their briefs to the paying down of a fraud claim counting as "value" they provided in exchange for the transfer amounts to a forfeiture of that argument.

4.      Finally, the parties disagree over the manner in which the defendants may stay the enforcement of the judgment. As the Court reads Civil Rule 62, the judgment itself need not address this matter.[16] Rather, enforcement activity is automatically stayed for 30 days after the entry of the judgment.[17] After the entry of the judgment, the defendant may provide a bond or other security at any time. Enforcement of the judgment is stayed upon the court's approval of the bond or security provided.[18]

To the extent it is useful to the parties, the Court understands the 2018 amendments to Rule 62 to allow either the posting of a supersedeas bond or an "other

---

[15] *See generally United States v. Dowdell*, 70 F.4th 134, 140-141 (3d Cir. 2023) (describing forfeiture of arguments made for the first time on appeal); *Mirtech, Inc. v. Agrofresh, Inc.*, No. 20-1170, 2023 WL 3996618 at * 6 (D. Del. June 14, 2023) (argument made for the first time on motion for reargument is "too late" and will not be considered).

[16] Civil Rule 62 is made applicable to this adversary proceeding via Bankruptcy Rule 7062.

[17] *See* Fed. R. Civ. P. 62(a) ("execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise").

[18] *See* Fed. R. Civ. P. 62(b) ("At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security.").

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441, and 22-50443
February 22, 2024
Page 10

security" as a means to obtain a stay of enforcement.  The Court agrees with the defendants that an irrevocable letter of credit can be an appropriate form of security, although the plan trustee would certainly be afforded the opportunity to argue that particular terms or conditions of a letter of credit may render it unsuitable.[19]

The parties also disagree over the amount of the proposed security, with the plan trustee arguing that it should be 130 percent of the judgment and the defendants suggesting it should be 120 percent.  Most of what a bond or security protects, beyond the ability to collect on the judgment itself, is a plaintiff's ability to recover post-judgment interest.  The current post-judgment interest rate is approximately 5 percent.  A bond of 120 percent of the judgment would thus protect the plan trustee for more than three and a half years' worth of post-judgment interest.  So while the plan trustee's right to object to any particular bond or security that the defendants may provide are fully preserved, the Court does not expect to require the posting of a bond in an amount exceeding 120 percent of the judgment.

---

[19] *See generally State Auto Prop. and Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc.*, 586 F. Supp.3d 328, 330-331 (E.D. Pa. 2022).

*Drivetrain, LLC v. Several Defendants, LLC*, Adv. Proc. Nos. 22-50439, 22-50441, and 22-50443
February 22, 2024
Page 11

\* \* \*

The Court will enter separate judgments in each of the three above-captioned cases consistent with this Letter Opinion.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge